[No. C005488. Third Dist. July 18, 1989.]

JERRY E. LANE, Plaintiff and Appellant, v.
I.U.O.E. STATIONARY ENGINEERS, LOCAL 39, Defendant and
Respondent.

**COUNSEL**

J. Steve Anderson III for Plaintiff and Appellant.

Van Bourg, Weinberg, Roger & Rosenfeld and Stewart Weinberg for Defendant and Respondent.

**OPINION**

**SPARKS, Acting P. J.**—This is a pleading case and the question on appeal is whether the trial court erroneously sustained a demurrer without leave to amend. The question turns upon whether a labor union, voluntarily representing one of its members in a disciplinary hearing before a municipal civil service board, had a duty of care and, if so, upon the nature of such duty. We conclude that under the facts alleged the union owed its member a duty akin to that of fair representation and such a duty would be breached if the union acted arbitrarily, discriminatorily or in bad faith.

Plaintiff Jerry Lane's second amended complaint against his union, defendant I.U.O.E. Stationary Engineers, Local 39 (Local 39), was dismissed after its demurrer was sustained without leave to amend. The first cause of action of that complaint, the only one at issue in this appeal, alleged that the union negligently breached its contract by inadequately representing plaintiff before, during and after disciplinary proceedings against him. The trial court ruled the union owed plaintiff no duty of care. We find that the trial court erred in finding no duty and that the complaint either already stated or could have been amended to state a claim for the breach of its duty to provide the equivalent of fair representation. The trial court therefore improperly sustained the demurrer without leave to amend.

## THE COMPLAINT

The facts are adopted from plaintiff's second amended complaint and are taken as true on review of an order sustaining a demurrer. (*Perdue* v. *Crocker National Bank* (1985) 38 Cal.3d 913, 922 [216 Cal.Rptr. 345, 702 P.2d 503].) Plaintiff was employed by the City of Sacramento (City) and was a member in good standing of Local 39. By virtue of his membership, plaintiff had entered into a contract with the union under which he was entitled to certain benefits. The contract called for Local 39 to act on plaintiff's behalf in handling disputes arising out of his employment with the City. The complaint alleges that implicit in the membership contract are the duties to investigate disputes adequately, to inform plaintiff of the progress of grievance proceedings and to advise him of his rights and obligations in the grievance process.

Plaintiff was involved in an automobile accident while on duty. Investigating officers determined that he was intoxicated with alcohol and took a blood sample; it contained no alcohol. Thereafter, a toxicology institute on behalf of the City analyzed the blood sample and determined plaintiff was intoxicated by and under the influence of THC, marijuana. "In fact, the THC level was not tantamount to being 'under the influence while on duty' and was not good cause for termination of employment, denial of work[ers'] compensation benefits, or denial of unemployment benefits." Nevertheless, the City terminated plaintiff's employment.

In representing plaintiff during the City's inquiry into this matter, Local 39 inadequately investigated the facts and failed to prevent the City from taking actions which hindered plaintiff's own fact-finding. The union hired a law firm to represent plaintiff in appealing the City's actions but failed to provide an adequate factual background, causing the appeal to fail. The complaint asserts as well that a proper investigation by the union would

have enabled it to establish plaintiff was not under the influence as alleged and the reasons given for his firing were pretextual.

After plaintiff's administrative appeal of the City's actions was denied, the union failed to inform plaintiff of this fact. Nor did the union tell plaintiff he had a further right to appeal the decision or that the union would not proceed with an appeal. As a result, plaintiff's further avenues of relief were foreclosed.

Plaintiff subsequently lost his rights to unemployment benefits and was denied workers' compensation benefits. In derogation of its duties, the union failed either to represent plaintiff on these matters or to inform him it would not do so. The complaint alleges these actions by the union breached its contractual duties toward plaintiff.

Local 39 demurred on the basis that the only duty it could have owed plaintiff was the one of fair representation imposed under labor law principles in its capacity as plaintiff's exclusive representative with the City. The trial court was asked to take judicial notice of the City's civil service rule which allows employees to represent themselves in disciplinary proceedings. The union's position was that plaintiff's right of self-representation at the various proceedings involved here negated the union's status as plaintiff's exclusive representative. The union asserted it therefore owed plaintiff no duty at all.

In a brief ruling, the trial court concluded no duty was owed because Local 39 did not exclusively represent plaintiff in these aspects of the employment relationship. The court sustained the union's demurrer without leave to amend and dismissed plaintiff's complaint. This appeal followed. We reverse.

## DISCUSSION

■  In testing the sufficiency of the complaint to state a cause of action, a demurrer admits all facts properly pleaded in the complaint. (*Perdue* v. *Crocker National Bank, supra,* 38 Cal.3d at p. 922; *Serrano* v. *Priest* (1971) 5 Cal.3d 584, 591 [96 Cal.Rptr. 601, 487 P.2d 1241, 41 A.L.R.3d 1187].) A demurrer tests only the sufficiency of the complaint's allegations and not the evidence which may be adduced to prove those allegations. It therefore lies only where the defects are apparent on the face of the pleading or may be judicially noticed. (*Afuso* v. *United States Fid. & Guar. Co.* (1985) 169 Cal.App.3d 859, 862 [215 Cal.Rptr. 490]; Code Civ. Proc., § 430.30.)
■  The sole question a general demurrer poses is whether the complaint

standing alone states a cause of action. (*Afuso, supra,* at p. 862; *SKF Farms v. Superior Court* (1984) 153 Cal.App.3d 902, 905 [200 Cal.Rptr. 497].)

■ The complaint's allegations are liberally construed on review of an order sustaining a demurrer without leave to amend. (*Heckendorn* v. *City of San Marino* (1986) 42 Cal.3d 481, 486 [229 Cal.Rptr. 324, 723 P.2d 64]; *Youngman* v. *Nevada Irrigation Dist.* (1969) 70 Cal.2d 240, 244-245 [74 Cal.Rptr. 398, 449 P.2d 462].) If it is reasonably possible that an amendment could cure a defective complaint or the pleading, as liberally construed, could state a cause of action, a demurrer without leave to amend should not be sustained. (*Heckendorn, supra,* at p. 486; *Minsky* v. *City of Los Angeles* (1974) 11 Cal.3d 113, 118 [113 Cal.Rptr. 102, 520 P.2d 726].)

The duty of fair representation is a principle developed in the particular structure of federal labor law. ■ "The duty of fair representation exists because it is the policy of the National Labor Relations Act to allow a single labor organization to represent collectively the interests of all employees within a unit, thereby depriving individuals in the unit of the ability to bargain individually or to select a minority union as their representative." (*DelCostello* v. *Teamsters* (1983) 462 U.S. 151, 164, fn. 14 [76 L.Ed.2d 476, 489, 103 S.Ct. 2281].)

Because the individual is deprived of the power of self-representation in disputes with the employer when the union has been certified as the exclusive representative, a corresponding duty is imposed on the union. The union must treat all of its members fairly and without discrimination, exercise its discretion in good faith, and not act arbitrarily toward them. (*Electrical Workers* v. *Foust* (1979) 442 U.S. 42, 46-47 [60 L.Ed.2d 698, 703-704, 99 S.Ct. 2121]; *Vaca* v. *Sipes* (1967) 386 U.S. 171, 177, 182 [17 L.Ed.2d 842, 850, 853, 87 S.Ct. 903]; *Humphrey* v. *Moore* (1964) 375 U.S. 335, 342-343 [11 L.Ed.2d 370, 377-378, 84 S.Ct. 363].)

However, it is also essential that labor organizations have some freedom and discretion in handling employee disputes with employers. The union and employer must be able to develop a consistent interpretation of the terms of the collective bargaining agreement, rather than being compelled to follow the desires of every individual union member. In order to prevent the settlement mechanism from being clogged by meritless complaints, the union must be permitted to sort out the substantial grievances from the unjustified ones. If the union did not have the power to settle or discard groundless complaints, the employer would have little motivation to participate in a dispute resolution mechanism. (*Vaca, supra,* 386 U.S. at pp. 191-192 [17 L.Ed.2d at pp. 858-859].) The union's resources could also be depleted as a result of being forced to pursue meritless complaints. Further,

important public interests are served by preserving unions as viable entities and preventing their financial depletion as a result of extended legal liability. For these reasons a union is held to have breached the duty of fair representation only if it acts arbitrarily, discriminatorily, or in bad faith. (*Id.* at p. 190 [17 L.Ed.2d at p. 857]; *Foust, supra,* 442 U.S. at p. 47 [60 L.Ed.2d at p. 704].)

Because the duty of fair representation arises from a union's status as an exclusive representative, there is ordinarily no such duty when the union does not occupy that position, or as to particular matters for which the union does not act as the employees' exclusive agent. (*Freeman* v. *Local Union No. 135, Chauffeurs, Etc.* (7th Cir. 1984) 746 F.2d 1316, 1320-1321; *Archer* v. *Airline Pilots Ass'n Intern.* (9th Cir. 1979) 609 F.2d 934, 939, cert. den. (1980) 446 U.S. 953 [64 L.Ed.2d 810, 100 S.Ct. 2920]; *Andrews* v. *Board of Supervisors* (1982) 134 Cal.App.3d 274, 283 [184 Cal.Rptr. 542].) As the *Andrews* court noted, "[a]bsent exclusive representation, the rationale for the reciprocal duty of fair representation does not exist." (*Andrews, supra,* at p. 283.)

Local 39 argued in its demurrer below that it was not an exclusive representative because plaintiff was entitled to present his own grievance. The union asked the trial court to take judicial notice of the City's civil service rule which permits employees to process their own challenges to disciplinary proceedings. (See City of Sacramento Rules and Regulations of the Civil Service Bd., rule 12.) The trial court found the union was not an exclusive representative and for that reason concluded the union owed plaintiff no duty.

■ The error in the union's reasoning, which was adopted by the court below, is the implicit proposition that where a union does not owe its members the formal duty of fair representation by virtue of its exclusive representation, it owes them no duty whatsoever. The union cited no authority, either in support of its demurrer or before this court, supporting this contention. Adopting this rationale would lead to absurd consequences. A union which is not an exclusive representative could agree to represent a member in disciplinary proceedings, conduct no inquiry, and then either not appear or simply concede all of the charges without facing any liability for its arbitrary or bad faith actions.

It is simply not the case that the only duty ever imposed on labor organizations arises out of its exclusive representation. Union members have been permitted to sue their unions for damages arising from intentional infliction of emotional distress (*Farmer* v. *Carpenters* (1977) 430 U.S. 290 [51 L.Ed.2d 338, 97 S.Ct. 1056]), for breach of contract in being expelled from a

union in violation of its constitution (*Machinists* v. *Gonzales* (1958) 356 U.S. 617 [2 L.Ed.2d 1018, 78 S.Ct. 923]), for negligently inflicted personal injuries (*Marshall* v. *International Longshoreman's & Warehousemen's Union* (1962) 57 Cal.2d 781 [22 Cal.Rptr. 211, 371 P.2d 987]), and for assault and battery (*Inglis* v. *Operating Engineers Local Union No. 12* (1962) 58 Cal.2d 269 [23 Cal.Rptr. 403, 373 P.2d 467]).

There are several sources of duties upon which plaintiff could base a claim. Plaintiff's complaint alleges he formed a contract with Local 39 under which the union agreed to provide certain representation services. A duty of care may arise by virtue of that contract. (*J'Aire Corp.* v. *Gregory* (1979) 24 Cal.3d 799, 803 [157 Cal.Rptr. 407, 598 P.2d 60]; *Valdez* v. *J. D. Diffenbaugh Co.* (1975) 51 Cal.App.3d 494, 505 [124 Cal.Rptr. 467].) Moreover, if the union had no formal obligation to represent plaintiff but voluntarily undertook to do so it owed him the duty to act with the requisite degree of care. (See *Coffee* v. *McDonnell Douglas Corp.* (1972) 8 Cal.3d 551, 558-559 [105 Cal.Rptr. 358, 503 P.2d 1366]; *Bloomberg* v. *Interinsurance Exchange* (1984) 162 Cal.App.3d 571, 575 [207 Cal.Rptr. 853].) Local 39 advances no persuasive arguments why it should be exempt from these legal duties.

We therefore conclude the trial court erred in finding Local 39 owed plaintiff no duty whatsoever. The complaint adequately alleges plaintiff and the union entered into a contract under which the union was required to provide representation services in some circumstances and could voluntarily undertake them in other situations. That contract imposed upon Local 39 a duty to perform those services at some level of care. The union also owed plaintiff some degree of care as a result of voluntarily taking on the responsibility of representing him.

The union relies primarily on *Andrews* v. *Board of Supervisors, supra,* 134 Cal.App.3d 274. In its view, this case holds that a nonexclusive representative owes no duty at all to its members. We disagree.

In *Andrews,* a county employee challenged ordinances which he argued unconstitutionally allowed a union to act as an exclusive representative, to his detriment, without imposing on it the corresponding duty of fair representation. (*Andrews, supra,* 134 Cal.App.3d 274 at p. 283.) The court simply held the Meyers-Milias-Brown Act (Gov. Code, § 3500 et seq.) did not impose a duty of fair representation because its terms permit employees to represent themselves. (*Andrews, supra,* at p. 274.) Thus, no duty of fair representation predicated upon exclusive representation arose in that case. No question of the applicability of any other duty was raised, and the plaintiff was suing his employer, not the union. (*Id.* at pp. 278-280.)

Since we conclude that the union owed its member some duty of care under the facts pled, we consider next the nature of that duty. Plaintiff contends the duty should be one of ordinary care under all the circumstances, the ordinary reasonable-man standard applicable to common variety negligence cases.[1] (See 6 Witkin, Summary of Cal. Law (9th ed. 1988) Torts, § 750, pp. 87-88.) We disagree. For reasons of public policy, higher degrees of care have been fashioned by the courts in special situations. Thus, for example, the risk incident to dealing with explosive and other dangerous substances, it has been held, requires that more than ordinary care be exercised. (*Warner* v. *Santa Catalina Island Co.* (1955) 44 Cal.2d 310, 317 [282 P.2d 12]; see generally, 6 Witkin, Summary of Cal. Law (9th ed. 1988) Torts, § 762, pp. 102-103.) For similar reasons of public policy, the standard of care has been reduced in appropriate cases to protect other, competing interests. This is such a case. In our view, the correct standard of care for union representation cases was articulated by the Florida Supreme Court in *DeGrio* v. *American Fed. of Gov. Employees* (Fla. 1986) 484 So.2d 1. There a federal employee successfully sued her union for negligence when it failed, contrary to its promise, to have a representative attend a termination hearing on her behalf. Although a member of the union, plaintiff was not a member of the exclusive bargaining unit. Consequently, she could have chosen anyone she wished to represent her at the hearing. Nevertheless, she chose a union representative to represent her. The representative failed to appear at the hearing and plaintiff's termination was upheld. Plaintiff recovered compensatory and punitive damages on her negligence claim. On appeal to the Florida District Court of Appeal, the union argued that the claimed breach of duty was a breach of the duty of fair representation owed by a labor union to its member and that the jurisdiction of the state courts had been preempted in this area. The plaintiff countered that the duty of fair representation was not involved; rather, the union breached a common law duty to act with reasonable care, a duty which was imposed when the union voluntarily undertook to represent her on her job-termination appeal. The Florida intermediate court agreed that the union was not plaintiff's exclusive bargaining representative and consequently did not owe her a duty of fair representation. (*Am. Fed. of Gov. Employees* v. *DeGrio* (Fla.Dist.Ct.App. 1984) 454 So.2d 632, 637.)

---

[1] It has generally been held that mere negligence does not violate the duty of fair representation. (*Peterson* v. *Kennedy* (9th Cir. 1985) 771 F.2d 1244, 1253-1255; *Higdon* v. *United Steelworkers of America* (11th Cir. 1983) 706 F.2d 1561, 1562; *Curtis* v. *United Transp. Union* (8th Cir. 1983) 700 F.2d 457, 458; *Ruzicka* v. *General Motors Corp.* (6th Cir. 1981) 649 F.2d 1207, 1212.) The Ninth Circuit, however, has held under some limited circumstances, involving ministerial as opposed to discretionary conduct, union negligence may breach the duty of fair representation. (See, e.g., *Galindo* v. *Stoody* (9th Cir. 1986) 793 F.2d 1502, 1513-1514; *Dutrisac* v. *Caterpillar Tractor Co.* (9th Cir. 1983) 749 F.2d 1270, 1272-1274.)

But the appellate court did not conclude its inquiry at that point, however. It also pointed out the union had voluntarily agreed to assist the plaintiff with her dispute. "The record, however, does support the trial court's finding that the [union] gratuitously undertook the obligation of representing [plaintiff] at her job termination hearing. In so doing, the [union] assumed a common law duty to exercise due care in that representation." (*Am. Fed. of Gov. Employees, supra,* 454 So.2d 632 at p. 637.) "The duty the [union] allegedly breached, therefore, arises," the court concluded, "from the common law of negligence, and not from federal labor policy." (*Ibid.*)

On a petition to review to the Supreme Court of Florida, the higher court held the negligence standard was inappropriate. (*DeGrio, supra,* 484 So.2d at p. 3.) While the union was not free of liability simply because it was not the plaintiff's exclusive representative, the court concluded the union should be held only to the standard commonly applied in the labor law context, that of the duty of fair representation. This decision was based on the public policies intended to protect unions, policies which we have already recounted. The Florida high court found there was no reason to impose a higher duty when the union is providing voluntary, as compared to obligatory, services. (*Id.* at pp. 3-4.) "Although the instant case does not involve that mandatory duty [of fair representation], we find that the duty accepted by the union was the obligation to represent [the plaintiff] fairly in her job termination proceeding. We find that the union's duty is no greater because it was voluntarily assumed than it would have been had the collective bargaining agreement required representation of [plaintiff]. The subject labor agreement enabled the union to appear at [plaintiff's] hearing at her request; whether voluntary or not, the services performed resulted from the labor agreement. Allowing a union member to bring this type of action in common law negligence based on the union's conduct in representing a union member in a proceeding permitted by a labor agreement would defeat the basic philosophy behind [the] restrictive liability of a union's duty of fair representation. If common law negligence applied to this action, it would apply in every instance where a union, as a gratuitous service to its members, provides voluntary assistance in labor proceedings. To require a higher duty when the union performs a service voluntarily than when it is obligated to perform that service would make no sense at all." (*Id.* at p. 3.)

But for other reasons, the Florida high court ruled the state courts did not have jurisdiction over the plaintiff's claim. "We conclude that the federal labor relations statutes, regulations, and executive orders exclusively govern this type of proceeding for federal employees and preempt state courts." (*DeGrio, supra,* 484 So.2d at p. 3.)

We agree with the *DeGrio* court's (*supra*, 484 So.2d 1) assessment of the standard of care. While we have concluded that Local 39 owed plaintiff a duty of care in this case, we also agree that there is no reason to impose a duty of higher care on a union when it voluntarily provides services to its members as a nonexclusive representative. Strong policies underlie the numerous United States Supreme Court decisions which hold a union violates its obligations toward its members in handling grievances only when it acts arbitrarily, discriminatorily, or in bad faith. (See *Vaca, supra,* 386 U.S. at pp. 189-193 [17 L.Ed.2d at pp. 857-859].) If an ordinary negligence standard were to be applied, it would tend to curtail voluntary undertakings by the union for its members and thus diminish the important public benefits provided by union representation in labor disputes. We hold therefore that the duty of care in these circumstances is the same as that imposed by duty of fair representation: a duty to act fairly, honestly, and in good faith; and to refrain from acting arbitrarily, discriminatorily, or in bad faith.

The union contends that even if it owed a duty equivalent to that of fair representation, it did not breach that duty because it hired competent counsel to represent plaintiff at the hearing and it is not responsible for the acts of counsel. (See *Weitzel* v. *Oil Chemical & Atomic Wkrs. Intern. U.* (9th Cir. 1982) 667 F.2d 785 [union made good faith effort to secure competent counsel and no evidence that union otherwise acted in an arbitrary, discriminatory, or bad faith action; no claim for breach of duty of fair representation stated].) The contention misses the mark. Plaintiff's complaint asserts misconduct on the part of the union, not malpractice by counsel.

Given our holding, it follows that the union's demurrer in this case should not have been sustained without leave to amend unless plaintiff could not amend his complaint to allege the union acted arbitrarily, discriminatorily, or in bad faith. In fact, plaintiff's second amended complaint, as currently worded, already pleads facts which might be viewed as stating a violation of the duty akin to fair representation. The complaint asserts the union did not inform plaintiff he had lost the appeal which the union conducted. The complaint also states that the union did not tell plaintiff he had a right to appeal that decision and that the union did not intend to pursue the appeal. As a result, plaintiff's ability to challenge the City's ruling was foreclosed. This conduct appears on the face of the complaint to be arbitrary and therefore could support a claim for breach of the duty, arising from the contract and the union's voluntary undertaking, not to represent plaintiff in an arbitrary manner.

In *Robesky* v. *Qantas Empire Airways Ltd.* (9th Cir. 1978) 573 F.2d 1082, the court held a union's failure to inform the plaintiff member it did not

intend to make further attempts to process her grievance could constitute a violation of the duty of fair representation if, as she alleged, the plaintiff would have accepted a settlement offer had she been given this information. Absent a rational explanation by the union for its inaction, its conduct was arbitrary. (*Id.* at pp. 1086-1087, 1091.) Local 39 claims that *Robesky* is distinguishable because there the union failed to advise plaintiff it would not take her grievance to arbitration. Here there was no arbitration alternative available to the union and the only other form of relief was to institute litigation. Since the union has no obligation to file lawsuits on behalf of its members, it cannot be faulted for not telling its member that it was not going to do so. The argument is unconvincing. The misconduct of the union was not its failure to file a lawsuit but in failing without justification to tell its member, as it promised, that he had lost the civil service hearing, that the union would no longer represent him, and that he could seek further relief on his own behalf. It is the union's inaction, its inexplicable failure to inform its member under the alleged circumstances of this case, that may constitute a breach of the duty equivalent to fair representation.

A similar conclusion was reached for a different type of inaction in *Foust* v. *International Brotherhood of Electrical Workers* (10th Cir. 1978) 572 F.2d 710, reversed in part on other grounds (1979) 442 U.S. 42 [60 L.Ed.2d 698, 99 S.Ct. 2121]. In that case, the union was not the member's exclusive representative for the grievance mechanism. Yet the union undertook to represent the employee, giving rise to a duty to perform competently. (*Id.* at pp. 715-717.) The court held the union's unjustifiable failure to timely file the employee's claim could constitute arbitrary action which would violate the duty of fair representation. (*Id.* at pp. 714-716; see also *Dutrisac* v. *Caterpillar Tractor Co., supra,* 749 F.2d at p. 1273.)

In addition, the complaint in this case appears to allege plaintiff's membership contract obligated the union to represent him in disputes concerning unemployment and workers' compensation benefits. However, the union failed to represent plaintiff as required and did not tell him that. These allegations, if true, could also be construed to refer to arbitrary conduct. Thus, the complaint as presently drafted could be read to assert a cause of action for breach of a duty akin to that of fair representation. And even if it could not be so read, plaintiff should be given an opportunity to amend his complaint to allege explicitly his claim under that theory.

DISPOSITION

The judgment is reversed and the cause remanded to the superior court with directions to enter a new order granting plaintiff 30 days in which to

amend the complaint in a manner consistent with this opinion. Costs shall be awarded to plaintiff.

Marler, J., and Davis, J., concurred.

Respondent's petition for review by the Supreme Court was denied September 28, 1989.