[No. A066211. First Dist., Div. Three. June 20, 1995.]

DANIEL HUSSEY, Plaintiff and Appellant, v.
OPERATING ENGINEERS LOCAL UNION NO. 3 OF THE
INTERNATIONAL UNION OF OPERATING ENGINEERS, AFL-CIO,
Defendant and Respondent.

**[Opinion certified for partial publication.†]**

† Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts IIC and IID.

COUNSEL

Hayes & Mitchell and Debra A. Hayes for Plaintiff and Appellant.

Leonard, Nathan, Zuckerman, Ross, Chin & Remar and Lynn Rossman Faris for Defendant and Respondent.

OPINION

**MERRILL, J.**—Plaintiff Daniel Hussey appeals from the judgment entered following the grant of summary judgment in favor of defendant Operating Engineers Local Union No. 3 of the International Union of Operating Engineers (the Union).[1] We have determined summary judgment was properly granted.

I

PROCEDURAL AND FACTUAL BACKGROUND

Hussey filed a complaint against the Union and its business agent, Tonie Jones, alleging causes of action for breach of contract, negligence, breach of fiduciary duty and negligent infliction of emotional distress. The claims

---

[1] The trial court's grant of summary judgment was also in favor of Tonie Jones. Hussey's appeal does not challenge the judgment with respect to Jones.

arose out of the Union's representation of Hussey in disciplinary and termination proceedings at a *Skelly*[2] hearing and an appeal before the Alameda County Civil Service Commission (the Commission). The proceedings resulted in his termination from employment as a heavy truck driver for Alameda County (the County). In the breach of contract claim, Hussey charged that the Union's membership agreement with him obligated the Union to provide him with an attorney and that the failure to provide such legal representation caused him to be terminated. Hussey's negligence cause of action asserted that the Union's representation of him at the *Skelly* hearing violated its duty of due care by failing to provide legal representation, call witnesses, protect his appeal rights, and advise him of his rights and duties at all stages of the disciplinary proceedings. In the breach of fiduciary duty claim, Hussey maintained the Union owed him a fiduciary duty because of his union membership and that it breached this duty in its representation of him at the disciplinary proceedings. In his final claim Hussey alleged that the Union's negligent representation caused him to suffer severe emotional distress.

As Hussey's appeal challenges the summary judgment only with respect to the negligence, breach of fiduciary duty and negligent infliction of emotional distress claims, we do not discuss the facts with respect to the contract claim.

The parties do not dispute the following facts: that Hussey was a member of the Union when he became the subject of disciplinary proceedings related to his unexcused absences without leave (AWOL) from his job; that in early August 1989 he had just finished serving a 30-day suspension for being AWOL, had returned to work for approximately 1 week when he was AWOL again; that Hussey told his supervisor a fabricated story that he was unable to call in to work concerning the last AWOL as his truck had broken down on the freeway and it took him several hours to get to a telephone; that a California Highway Patrol (CHP) officer had picked him up and driven him off the freeway and that later a County deputy sheriff named Gallagher drove him to work. Hussey told the Union's business agent Jones the same fabricated story about Deputy Sheriff Gallagher, a story which Jones was unable to corroborate despite repeated attempts to contact the deputy. In his deposition Hussey admits to the fabrications and to his unsuccessful attempts to get a Deputy Gallagher, with whom he was acquainted, to lie for him. The County terminated Hussey following the *Skelly* hearing held on August 23, 1989.

Jones met with Hussey prior to this *Skelly* hearing and her declaration states she did not learn that his story was a fabrication until shortly before

---

[2]See *Skelly* v. *State Personnel Bd.* (1975) 15 Cal.3d 194 [124 Cal.Rptr. 14, 539 P.2d 774].

the February 1990 appeal proceeding before the Commission. Jones was unable to find corroborating testimony to present to the County at the *Skelly* hearing or to present at the appeal hearing before the Commission. Jones claims that in speaking with him before the *Skelly* hearing date, Hussey assured her of the truth of his story. Hussey said he would provide her with a written statement from Deputy Gallagher. Jones also discussed with him the possibility of corroborating the story by providing written documentation of truck repairs and attempting to find the CHP officer who had purportedly driven him off the freeway. When Hussey did not produce Deputy Gallagher's statement, Jones decided not to mention him at the *Skelly* hearing. The County only mentioned that it was unable to corroborate any of the facts in Hussey's statement. Hussey states he told Jones his story was a fabrication with respect to a police officer's involvement before the *Skelly* hearing.

Prior to the appeal hearing, Jones contacted the CHP for corroboration of Hussey's story and learned that it did not keep records of picking up stranded motorists. The CHP did offer to arrange a photo line-up of all CHP officers on duty on the morning in question. However, Hussey was not willing to go to the CHP office to review the photos, despite Jones's urging. Jones also contacted the person who Hussey claimed repaired his truck but was unsuccessful in substantiating this aspect of his story as well. When Jones informed Hussey that the repair person had no record of working on the car or even receiving the car, they agreed he should not be called as a witness.

Jones telephoned Hussey several times to set up a meeting to prepare him for his testimony at the appeal hearing. He did not show up for a scheduled meeting, two days before the hearing. Additionally, he showed up 30 minutes late to the hearing and did not explain or apologize for his tardiness. When Jones sought to use the lunch break to prepare him for his testimony, Hussey refused. He told Jones that he did not want his job back and that he was on to something different. He stated he was only going through the hearing because of his father's wishes.

Hussey's declaration in opposition to summary judgment states he did not believe Jones was listening to him or interested in his grievance. She responded to his suggestion of possible witnesses by stating they were unnecessary. Hussey asked for representation by an attorney prior to the appeal hearing but was informed by Jones that she had checked with the Union's attorneys and that a lawyer was unnecessary.

Jones received the Commission hearing officer's decision on March 13, 1990, upholding the termination. The decision informed Jones that any

written comments[3] concerning the decision must be made before March 27, 1990. Jones phoned Hussey at the telephone number he had provided. She left a message with a woman who she believed resided with Hussey. According to Jones's declaration, when Hussey called Jones back, she told him of the March 27, 1990, deadline and he stated he would pick up a copy of the decision to review it. When he did not pick up the decision within a week, Jones asked her secretary to forward a copy to Hussey at the address he had provided. On March 22, 1990, the secretary did place a copy of the decision in the mail, certified, return receipt requested. However, instead of typing the address as "20021 Tesla Road," the secretary typed "10021 Tesla Rd." Failing to receive any word from Hussey, and recalling his statement of February 8, 1990, that he did not want his job back, Jones did not file any additional comments relating to the hearing officer's decision.

In his deposition testimony, Hussey admitted receiving notice of the hearing officer's decision from his former girlfriend, albeit after the March 27, 1990, deadline. Hussey's deposition shows that even though he had moved from the residence he had not informed Jones of this fact. However, in his declaration opposing summary judgment he denies that Jones informed him of the hearing officer's decision prior to the deadline for submitting written comments to the Commission.

## II

### DISCUSSION

A summary judgment motion shall be granted if all the papers submitted show that there is no triable issue of material fact and that the moving party is entitled to judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c).)

On a summary judgment motion the moving party's affidavits are strictly construed while those of the opposing party are liberally construed. (*Miller v. Bechtel Corp.* (1983) 33 Cal.3d 868, 874 [191 Cal.Rptr. 619, 663 P.2d 177].) In order to prevail on a summary judgment motion, the defendant must conclusively negate a necessary element of the plaintiff's case or establish a complete defense. (*LaRosa* v. *Superior Court* (1981) 122 Cal.App.3d 741, 744-745 [176 Cal.Rptr. 224].) Further, as a summary judgment motion raises only questions of law concerning the construction and effect of the supporting and opposing papers, on appeal we review directly the papers submitted in connection with the motion. (*AARTS Productions, Inc.* v. *Crocker National Bank* (1986) 179 Cal.App.3d 1061, 1064

---

[3]Notice of the hearing officer's decision informs the parties of their right to submit "written comments" to the Commission. It does not include a right to submit further evidence. The decision is reviewed by the Commission with or without comments.

[225 Cal.Rptr. 203].) Doubts as to the propriety of summary judgment are resolved against the granting of the motion. (*Becker* v. *IRM Corp.* (1985) 38 Cal.3d 454, 458 [213 Cal.Rptr. 213, 698 P.2d 116].)

## A. Negligence Cause of Action

A union does not owe a duty of due care to its members (*Steelworkers* v. *Rawson* (1990) 495 U.S. 362, 372-373 [109 L.Ed.2d 362, 375-376, 110 S.Ct. 1904]), as Hussey pled in his negligence cause of action. Instead, unions owe a duty of fair representation to their members, and this requires them to refrain from representing their members arbitrarily, discriminatorily, or in bad faith. (*Vaca* v. *Sipes* (1967) 386 U.S. 171, 190 [17 L.Ed.2d 842, 857-858, 87 S.Ct. 903]; *Lane* v. *I.U.O.E. Stationary Engineers* (1989) 212 Cal.App.3d 164, 169 [260 Cal.Rptr. 634].) The basis and scope of the duty was explained by the United States Supreme Court: "The duty of fair representation exists because it is the policy of the National Labor Relations Act to allow a single labor organization to represent collectively the interests of all employees within a unit, thereby depriving individuals in the unit of the ability to bargain individually or to select a minority union as their representative. In such a system, if individual employees are not to be deprived of all effective means of protecting their own interests, it must be the duty of the representative organization 'to serve the interests of all members without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct.' [Citations.]" (*DelCostello* v. *Teamsters* (1983) 462 U.S. 151, 164, fn. 14 [76 L.Ed.2d 476, 489, 103 S.Ct. 2281].)

The duty of fair representation is not breached by mere negligence. (*Castelli* v. *Douglas Aircraft Co.* (9th Cir. 1985) 752 F.2d 1480, 1482.) A union is accorded wide latitude in the representation of its members, and courts are reluctant to interfere with a union's decisions in representing its members absent a showing of arbitrary exercise of the union's power. (See *Steelworkers* v. *Rawson, supra,* 495 U.S. at p. 374 [109 L.Ed.2d at p. 376]; *Galindo* v. *Stoody Co.* (9th Cir. 1986) 793 F.2d 1502, 1515.)

Analyzing Hussey's second cause of action in terms of the duty of fair representation, and construing the papers submitted in connection with the summary judgment as we must, it is plain that the Union was entitled to judgment as a matter of law.

None of the Union's acts or omissions demonstrate the type of egregious conduct which would give rise to liability under the duty of fair representation. First, it is not a breach of the duty of fair representation for a union to fail to provide an attorney at disciplinary proceedings where the

employee was assisted by a union representative and the union's basis for not providing an attorney was nondiscriminatory. (*Castelli* v. *Douglas Aircraft Co.*, *supra*, 752 F. 2d at p. 1483.) ▆▆ Hussey has made no claim that the collective bargaining agreement includes a provision for legal representation at disciplinary proceedings.

Next, Jones's decision not to call witnesses at the *Skelly* hearing or at the proceeding before the Commission hearing officer cannot be considered arbitrary, discriminatory or in bad faith. Due to the fact that Hussey's story was fabricated, Jones was unable to locate corroborating witnesses. It is undisputed that Jones pursued an investigation of the various details contained in Hussey's statement. Contrary to the allegations of Hussey's complaint, the Union was under no duty to call certain witnesses in its representation of him at the various proceedings.

Hussey's claim that the Union failed to protect his appeal rights and allowed the appeal time period to expire is unsupported by the papers submitted in connection with summary judgment. It is undisputed that the Union failed to file additional written comments concerning the Commission hearing officer's decision upholding the termination. However, such comments are not required and the Commission did review the hearing officer's decision. Even if we were to determine that it would have been appropriate to file written comments, no triable issue is stated. Jones's omission, at worst, can only be considered negligence. The undisputed portions of her declaration pertinent to this period of time reveal that she attempted to relay notice of the decision to Hussey through his girlfriend at the telephone number he had provided. It is also undisputed that five days before the March 27, 1990, deadline, Jones's secretary attempted to mail a copy to the last known address for him, that there was a typographical error in the address and that the copy was returned by the post office uncollected. Neither does Hussey dispute that he informed Jones at the proceeding before the Commission hearing officer that he did not want his job back and was going forward with the hearing only because his father insisted on it.

The parties are in dispute as to whether Jones spoke to Hussey informing him of the decision before the deadline for filing written comments with the Commission. However, construing Hussey's declaration liberally and accepting as true the assertion that he was not informed of the hearing officer's decision prior to the deadline, no material triable issue is shown. At most, the Union's act of attempting to reach Hussey by phone at his last known telephone number and then mailing him a copy of the decision five days before the deadline, erroneously addressed, can only be considered negligence. These actions cannot be characterized as arbitrary, discriminatory or in bad faith.

Finally, no triable issue of material fact has been raised concerning Hussey's remaining negligence claim that Union failed to fully advise him of his rights and duties at all stages of the disciplinary proceedings. Assuming this refers to his contention that he was not informed of his right to "appeal," i.e., the right to file written comments, a triable issue has not been stated. As a matter of law, the Union's actions in this regard do not demonstrate egregious conduct giving rise to liability under the duty of fair representation.[4]

B. *Breach of Fiduciary Duty*

Hussey has cited no authority and we have discovered none for the theory that a union owes a fiduciary duty to its members, independent of the duty of fair representation. In fact, the decisions relied upon by Hussey, *Brady* v. *Trans World Airlines, Inc.* (3d Cir. 1968) 401 F.2d 87, 94, and *Williams* v. *Pacific Maritime Ass'n* (9th Cir. 1980) 617 F.2d 1321, 1331, demonstrate that a union's duty to represent its members which may be akin to a fiduciary duty is simply part of the duty of fair representation. Summary judgment on Hussey's third cause of action for breach of fiduciary duty was properly granted.

C., D.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . .

## III

### DISPOSITION

The judgment is affirmed.

Chin, P. J., and Corrigan, J., concurred.

---

[4]In the unpublished portion of this opinion we find that the trial court was correct in granting summary judgment on the cause of action for negligent infliction of emotional distress.

*See footnote, *ante*, page 1213.