[No. E035295. Fourth Dist., Div. Two. Dec. 23, 2004.]

JEFFREY JONES, Plaintiff and Appellant, v.
OMNITRANS, Defendant and Respondent.

## COUNSEL

Castle, Petersen & Krause, Dabney B. Finch and Robert W. Krause for Plaintiff and Appellant.

Ronald D. Reitz, County Counsel, and Carol A. Greene, Deputy County Counsel, for Defendant and Respondent.

## OPINION

**McKINSTER, J.**—Jeffrey Jones appeals from a judgment of dismissal entered after the trial court sustained Omnitrans's demurrer to Jones's petition for writ of mandate, without leave to amend.

Jones contends that he was deprived of his constitutionally protected property interest in continued employment with Omnitrans, a public transit agency, without due process of law because Omnitrans dismissed him and refused to afford him a posttermination hearing to contest his dismissal. He contends that the memorandum of understanding (MOU) between Omnitrans and his union, which provided for a multistep grievance procedure in which only the union could request arbitration, is unenforceable because it waives the individual employee's right to due process in violation of California decisional law. Omnitrans contends, however, that the grievance procedure satisfies due process requirements, even though it vests the union with the exclusive authority to decide whether to request arbitration.

We conclude that the grievance procedure satisfied the requirements of due process and that the petition therefore failed to state a cause of action. We affirm the judgment.

### DISCUSSION

*Standard of Review*

On appeal from a dismissal entered after an order sustaining a demurrer to a petition for writ of mandate, we review the order de novo, determining independently whether the petition states a cause of action as a matter of law. (*City of Morgan Hill v. Bay Area Air Quality Management Dist.* (2004) 118 Cal.App.4th 861, 869 [13 Cal.Rptr.3d 420].) We give the petition a reasonable interpretation, reading it as a whole and viewing its parts in context. We deem to be true all material facts that were properly pled, as well as all facts that may be inferred from those expressly alleged. (*Ibid.*) We also accept as true all recitals of evidentiary facts contained in exhibits

attached to the petition. (*Satten v. Webb* (2002) 99 Cal.App.4th 365, 375 [121 Cal.Rptr.2d 234].) We interpret the petition's allegations liberally, with a view toward substantial justice between the parties. (*Quelimane Co. v. Stewart Title Guaranty Co.* (1998) 19 Cal.4th 26, 43, fn. 7 [77 Cal.Rptr.2d 709, 960 P.2d 513].) If the facts alleged by the petitioner state a cause of action under any possible legal theory, we will order the demurrer overruled. (*City of Morgan Hill v. Bay Area Air Quality Management Dist., supra,* 118 Cal.App.4th at p. 870.)

■ An essential element of a cause of action for mandamus is the existence of a clear, present and usually ministerial duty upon the part of the respondent. (Code Civ. Proc., § 1085; *Santa Clara County Counsel Attys. Assn. v. Woodside* (1994) 7 Cal.4th 525, 539–540 [28 Cal.Rptr.2d 617, 869 P.2d 1142].) A ministerial duty is an act that a public officer is obligated to perform in a prescribed manner required by law when a given state of facts exists. (*Transdyn/Cresci JV v. City and County of San Francisco* (1999) 72 Cal.App.4th 746, 752 [85 Cal.Rptr.2d 512].) The existence of a duty allegedly arising from the constitutional guarantee of due process is a question of law decided de novo on appeal. (*Bergeron v. Department of Health Services* (1999) 71 Cal.App.4th 17, 22 [83 Cal.Rptr.2d 481].)

*Factual Background*

Jones's petition alleged that he was employed by Omnitrans, a local public transit agency, as a coach operator. On July 23, 2002, Omnitrans dismissed Jones for misconduct involving a verbal altercation with a security guard. Jones requested arbitration of his dismissal. Jones's union, Amalgamated Transit Union Local 1704, declined to take the matter to arbitration. Jones requested that Omnitrans proceed with the arbitration in spite of the union's refusal, but Omnitrans refused. Omnitrans concluded that because the union declined to pursue arbitration on Jones's behalf, Omnitrans was without the authority to engage in arbitration and would be in violation of the MOU if it did so.

The MOU provides for an optional informal grievance procedure and a three-step formal grievance procedure. Step 1 in the formal procedure provides that the employee may present his grievance in writing, with or without union representation, to the director of operations. The director must schedule a meeting within 15 working days of receipt of the written grievance, discuss the grievance with the employee, and respond in writing within seven working days after the meeting. Step 2 requires that if the grievance is not resolved in Step 1, the employee must submit the grievance to the CEO/general manager, again with or without union representation. The CEO/general manager or his designee must schedule a meeting within 15

days of receipt of the grievance, discuss the grievance with the employee, and issue a written response within seven working days after the meeting. Step 3, the step which is at issue in this case, states in pertinent part:

"If the grievance is not resolved in Step 2 and if the grievance is . . . over a disciplinary action that resulted in . . . termination, . . . the employee, *with the [union] representative*, may request, in writing, that the grievance be referred to a Grievance Committee, made up of a representative appointed by the Agency, a representative appointed by the [union] and a third party mutually selected by the parties. *The union will, in accordance with its bylaws, call for a membership vote to confirm whether or not they wish to proceed with this step of the grievance within 30 days of the request for grievance advancement.* The union representative must be a member of ATU Local 1704. The third party shall be selected from a list of not more than seven (7) names furnished by the State Mediation and Conciliation Service. A separate list shall be obtained for each action pursuant to this procedure *after notification has been received from the [union] to proceed with the Step 3 procedure.* [¶] The Grievance Committee shall . . . hold a hearing to receive testimony and submit its decision to the CEO/General Manager for implementation or further appeal." (Italics added.)

### *Under the Facts Alleged in the Petition, Omnitrans Had No Duty to Afford Jones a Hearing*

### *Jones Had a Property Interest in Continued Employment*

██ A public employee who is subject to discharge only for cause has a constitutionally protected property interest in continued employment. (*Coleman v. Department of Personnel Administration* (1991) 52 Cal.3d 1102, 1112 [278 Cal.Rptr. 346, 805 P.2d 300]; U.S. Const., 14th Amend.; Cal. Const., art. I, § 7, subd. (a).) The property interest may be created by statute or by rules adopted by the public agency. (*Skelly v. State Personnel Bd.* (1975) 15 Cal.3d 194, 207–208 [124 Cal.Rptr. 14, 539 P.2d 774]; *Townsel v. San Diego Metropolitan Transit Development Bd.* (1998) 65 Cal.App.4th 940, 950 [77 Cal.Rptr.2d 231]; *Mendoza v. Regents of University of California* (1978) 78 Cal.App.3d 168, 173–174 [144 Cal.Rptr. 117].)

Jones's petition alleges that Omnitrans is a local public agency[1] but does not expressly allege that his employment was subject to termination only for

---

[1] For purposes of the Meyers-Milias-Brown Act (Gov. Code, § 3500 et seq.), which governs relations between local public agencies and their employees and organizations which represent those employees (*Santa Clara County Counsel Attys. Assn. v. Woodside, supra,* 7 Cal.4th 525, 536–537), "public agency" means "every governmental subdivision, every district, every public and quasi-public corporation, every public agency and public service corporation and every town, city, county, city and county and municipal corporation, whether incorporated or not and whether chartered or not." (Gov. Code, § 3501, subd. (c).)

cause. None of the exhibits to the petition expressly recites that Jones was subject to dismissal only for cause. However, exhibit 1 to the petition, the "Notice of Proposed Disciplinary Action: Dismissal" issued to Jones by Omnitrans, recites that Jones was being dismissed for a specified cause and refers to portions of the Omnitrans Personnel Policy Manual that we infer provide for dismissal upon a first violation of certain provisions. Because this exhibit supports an inference that Jones could be dismissed only for cause pursuant to the rules adopted by Omnitrans, and because Omnitrans does not contend otherwise, we conclude that, construed liberally, the petition and its exhibits sufficiently allege that Jones could be discharged only for cause (*Satten v. Webb, supra*, 99 Cal.App.4th at p. 375; *Quelimane Co. v. Stewart Title Guaranty Co., supra*, 19 Cal.4th at p. 43, fn. 7) and that he therefore had a constitutionally protected property interest in continued employment by Omnitrans.

### *The Grievance Procedure Provided Adequate Procedural Due Process*

■ A public employee who is subject to dismissal only for cause may not be dismissed without being afforded procedural safeguards that are sufficient to satisfy the employee's right to due process. (*Coleman v. Department of Personnel Administration, supra*, 52 Cal.3d at p. 1112; *Skelly v. State Personnel Bd., supra*, 15 Cal.3d at p. 209.) Procedural due process requires at a minimum that the employee be given notice of the reasons for the termination, an opportunity to respond to the charges, either orally or in writing, and an evidentiary hearing at which the employer bears the burden of proving the facts supporting the decision to terminate the employment. (*Phillips v. State Personnel Bd.* (1986) 184 Cal.App.3d 651, 656 [229 Cal.Rptr. 502], disapproved on another ground by *Coleman v. Department of Personnel Administration, supra*, 52 Cal.3d at p. 1123, fn. 8; *Townsel v. San Diego Metropolitan Transit Development Bd., supra*, 65 Cal.App.4th at pp. 946–950.) The hearing may be held either before or after the employee has been discharged. (*Townsel v. San Diego Metropolitan Transit Development Bd., supra*, at p. 949.)

■ The right to due process is a personal one, and California courts have held that a collective bargaining agreement may not waive an employee's right to due process. (*Phillips v. State Personnel Bd., supra*, 184 Cal.App.3d at p. 660.) However, in *Armstrong v. Meyers* (9th Cir. 1992) 964 F.2d 948, the Ninth Circuit Court of Appeals held that due process is satisfied by a collective bargaining agreement that affords the employee notice, an opportunity

to be heard and the opportunity for arbitration of his dismissal, even though the employee's union has sole authority to request the hearing, as long as the union is acting under a duty of fair representation. (*Id.* at pp. 950–951.)

*Armstrong* is not binding on this court (*Wagner v. Apex Marine Ship Management Corp.* (2000) 83 Cal.App.4th 1444, 1451 [100 Cal.Rptr.2d 533]), and there is no California authority which is directly on point. However, we agree with *Armstrong*'s reasoning.

■  Due process is " 'flexible and calls for such procedural protections as the particular situation demands.' " (*Armstrong v. Meyers, supra*, 964 F.2d at p. 950, quoting *Mathews v. Eldridge* (1976) 424 U.S. 319, 334 [47 L.Ed.2d 18, 96 S.Ct. 893, 902].) In *Mathews*, the United States Supreme Court held that three factors are to be considered in determining whether a particular procedure satisfies due process: "First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." (*Mathews v. Eldridge, supra*, 424 U.S. at p. 335.)

■  An employee's interest in keeping his job is substantial. (*Armstrong v. Meyers, supra*, 964 F.2d at p. 950.) However, there is a strong public policy in favor of "providing a reasonable method of resolving disputes" between local public agencies and their employees concerning terms and conditions of employment. (Gov. Code, § 3500; see *Armstrong v. Meyers, supra*, 964 F.2d at pp. 950–951.) To that end, the Meyers-Milias-Brown Act authorizes the formation of employee organizations to represent employees in negotiating terms and conditions of employment with public agencies and the creation of an MOU establishing rules governing the employer-employee relationship. (Gov. Code, §§ 3500, 3505; *Santa Clara County Counsel Attys. Assn. v. Woodside, supra*, 7 Cal.4th at pp. 536–537.)

■  A central feature of the majority of collective bargaining agreements is a process for the resolution of disputes between employers and employees, and there is a strong public and private interest in maintaining an *effective* grievance process to settle such disputes. (*Armstrong v. Meyers, supra*, 964 F.2d at p. 951.) Union discretion in determining which grievances to arbitrate is essential to the functioning of the collective bargaining system: "Though

we accept the proposition that a union may not arbitrarily ignore a meritorious grievance or process it in perfunctory fashion, we do not agree that the individual employee has an absolute right to have his grievance taken to arbitration regardless of the provisions of the applicable collective bargaining agreement. . . . In providing for a grievance and arbitration procedure which gives the union discretion to supervise the grievance machinery and to invoke arbitration, the employer and the union contemplate that each will endeavor in good faith to settle grievances short of arbitration. Through this settlement process, frivolous grievances are ended prior to the most costly and time-consuming step in the grievance procedures. Moreover, both sides are assured that similar complaints will be treated consistently. . . . [¶] If the individual employee could compel arbitration of his grievance regardless of its merit, the settlement machinery provided by the contract would be substantially undermined . . . . Moreover, under such a rule, a significantly greater number of grievances would proceed to arbitration. This would greatly increase the cost of the grievance machinery and could so overburden the arbitration process as to prevent it from functioning successfully." (*Vaca v. Sipes* (1967) 386 U.S. 171, 191–192 [17 L.Ed.2d 842, 87 S.Ct. 903, 917–918], fn. omitted; *Armstrong v. Meyers, supra,* 964 F.2d at p. 951.)[2]

The parties have not cited any California cases which address the specific due process concerns raised in this case, and our research has disclosed none. However, our courts recognize the importance of allowing unions discretion in deciding which grievances have sufficient merit to be taken to arbitration. In *Lane v. I.U.O.E. Stationary Engineers* (1989) 212 Cal.App.3d 164 [260 Cal.Rptr. 634], the court held that it is "essential that labor organizations have some freedom and discretion in handling employee disputes with employers. . . . In order to prevent the settlement mechanism from being clogged by meritless complaints, the union must be permitted to sort out the substantial grievances from the unjustified ones. If the union did not have the power to settle or discard groundless complaints, the employer would have little motivation to participate in a dispute resolution mechanism." (*Id.* at p. 169, citing *Vaca v. Sipes, supra,* 386 U.S. at pp. 191–192.) Similarly, in *Anderson v. California Faculty Assn.* (1994) 25 Cal.App.4th 207 [31 Cal.Rptr.2d 406], the court quoted *Vaca v. Sipes* for the proposition that employees have no absolute right to compel arbitration, and that there is no substantial danger to the individual employee's rights if the union is given the

---

[2] *Vaca v. Sipes, supra,* 386 U.S. 171 does not address the due process issue raised in this case and is therefore not binding precedent on that issue. (See *Palmer v. GTE California, Inc.* (2003) 30 Cal.4th 1265, 1278 [135 Cal.Rptr.2d 654, 70 P.3d 1067] [an opinion is not authority for a proposition which was not considered].) However, the portion of *Vaca v. Sipes* quoted above illustrates the compelling public policy considerations which underlie the establishment through collective bargaining of a grievance procedure such as that involved in this case.

contractual power "honestly and in good faith to settle grievances short of arbitration." (*Anderson* at p. 219, quoting *Vaca v. Sipes, supra*, 386 U.S. at pp. 191–192.)

Finally, "the risk of an erroneous determination in the grievance/arbitration procedure is not large, and the value of additional or substitute procedures is not great," because, although the union may decide not to take a grievance to arbitration, it does so "under a duty of fair representation, and may be sued for breach of that duty if its 'conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith.' " (*Armstrong v. Meyers, supra*, 964 F.2d at p. 950, quoting *Vaca v. Sipes, supra*, 386 U.S. at p. 190.) The availability of recourse for a breach of the duty of fair representation allays any concern that might otherwise arise from limiting the employee's individual right to seek a hearing: "Nor do we see substantial danger to the interests of the individual employee if his statutory agent is given the contractual power honestly and in good faith to settle grievances short of arbitration." (*Vaca v. Sipes, supra*, 386 U.S. at p. 192.)

The duty of fair representation is implicit in the National Labor Relations Act (NLRA) (29 U.S.C. § 151 et seq.) and is made explicit in some California labor laws. (See *Vaca v. Sipes, supra*, 386 U.S. at p. 177; *Armstrong v. Meyers, supra*, 964 F.2d at p. 951, fn. 4.) The NLRA does not apply to public employees (*Armstrong v. Meyers, supra*, at p. 951; 29 U.S.C. § 152(2)), and the Meyers-Milias-Brown Act does not explicitly provide that employee organizations created under its aegis have a duty to their members of fair representation. (Gov. Code, §§ 3500–3510.) Nevertheless, California courts recognize that any labor organization which acts as the exclusive representative of its members has such a duty. (*Hussey v. Operating Engineers Local Union No. 3* (1995) 35 Cal.App.4th 1213, 1219 [42 Cal.Rptr.2d 389]; *Lane v. I.U.O.E. Stationary Engineers, supra*, 212 Cal.App.3d at pp. 166–175; *Lerma v. D'Arrigo Brothers Co.* (1978) 77 Cal.App.3d 836, 840–843 [144 Cal.Rptr. 18].) This is true whether the union becomes the employee's exclusive representative by statute or by contract. (*Lerma v. D'Arrigo Brothers Co.*, at p. 840–843.) Members of such organizations have recourse for breach of that duty, either through the courts or through the Public Employment Relations Board (PERB). (See *Lane v. I.U.O.E. Stationary Engineers, supra*, 212 Cal.App.3d at pp. 166–175; *Lerma v. D'Arrigo Brothers Co., supra*, 77 Cal.App.3d at pp. 840–843; *Anderson v. California Faculty Assn., supra*, 25 Cal.App.4th at pp. 210–220 [statutory scheme under which employee organization is created may provide for exclusive PERB jurisdiction over claims of unfair practices].) The MOU between Omnitrans and the union made the union Jones's exclusive representative with respect to Step 3 of the grievance procedure, and he therefore has recourse against the union if its decision not to pursue arbitration on his

behalf was arbitrary, discriminatory or in bad faith.[3] (*Lerma v. D'Arrigo Brothers Co., supra*, 77 Cal.App.3d at pp. 840–843.)

We conclude that the grievance procedure provided in the MOU between Omnitrans and Jones's union afforded him sufficient procedural due process. Jones received written notice of the reasons for his dismissal. Pursuant to the MOU, Jones had the absolute right to submit his grievance in writing and to have a meeting with two levels of management to discuss his grievance. At each step, he was entitled to a written response to his grievance. Because the MOU provided that the union was the employee's exclusive representative with respect to determining whether to pursue the grievance to arbitration pursuant to Step 3 of the grievance procedure, the union had a duty of fair representation and could not make that determination arbitrarily, discriminatorily or in bad faith. (*Lerma v. D'Arrigo Brothers Co., supra*, 77 Cal.App.3d at pp. 840–843; *Lane v. I.U.O.E. Stationary Engineers, supra*, 212 Cal.App.3d at p. 170.) For the reasons stated in *Armstrong v. Meyers, supra*, 964 F.2d at pages 950–951, this procedure afforded Jones adequate due process, and Omnitrans had no duty to arbitrate Jones's grievance in the absence of a request from the union that it do so.[4]

Jones relies on *Phillips v. State Personnel Bd., supra*, 184 Cal.App.3d 651, which held that a union may not waive the individual due process rights of its members in a collective bargaining agreement. (*Id.* at pp. 659–660.) We agree

---

[3] In *Andrews v. Board of Supervisors* (1982) 134 Cal.App.3d 274 [184 Cal.Rptr. 542], the court held that the Meyers-Milias-Brown Act does not imply a duty of fair representation because Government Code section 3502 allows public agency employees "to represent themselves individually in their employment relations with the public agency" and therefore does not provide for exclusive representation by the union. (*Andrews, supra*, at pp. 279, 283–284. See also *Relyea v. Ventura County Fire Protection Dist.* (1992) 2 Cal.App.4th 875, 880–883 [3 Cal.Rptr.2d 614] [nonunion member employee has no right to bargain individually with agency, but has "nonenforceable" right to represent himself with respect to personal grievances].)

Government Code section 3502 provides that public agency employees may opt not to join an employee organization and, *if* they exercise their right not to join the organization, may represent themselves: "Except as otherwise provided by the Legislature, public employees shall have the right to form, join, and participate in the activities of employee organizations of their own choosing for the purpose of representation on all matters of employer-employee relations. Public employees also shall have the right to refuse to join or participate in the activities of employee organizations and shall have the right to represent themselves individually in their employment relations with the public agency." (Gov. Code, § 3502.) Nothing in the statute implies that if the employee does join the union and the union is the exclusive agent of its members by contract, as is the case here, he may nevertheless choose to represent himself.

[4] Jones attempts to distinguish *Armstrong* on the ground that Armstrong brought suit for damages for violation of his right to due process under section 1983 of title 42 of the United States Code, while Jones merely seeks a hearing. (*Armstrong v. Meyers, supra*, 964 F.2d at pp. 949–950.) We are unable to discern how this distinction affects the question here presented, i.e., whether the grievance procedure established in the MOU satisfies the requirements of due process.

that a collective bargaining agreement may not waive employees' constitutional due process rights. However, the issue here is whether the MOU *did* unconstitutionally waive Jones's due process right to a hearing, and *Phillips* sheds no light on that issue.

Phillips, an employee of the California State University at Fresno, was absent from work without authorization for more than five consecutive days. The university invoked the automatic resignation provision in the MOU, which provided that "An employee who is absent for five (5) consecutive workdays without securing authorized leave" shall be considered to have automatically resigned from his employment as of the fifth day, and informed Phillips that he was deemed to have resigned. (*Phillips v. State Personnel Bd., supra,* 184 Cal.App.3d at p. 654.) Phillips appealed the determination to the State Personnel Board. The board dismissed the appeal without a hearing. Phillips filed a petition for writ of mandate seeking a hearing or an order reinstating him. (*Id.* at p. 655.) The appellate court held that the automatic resignation provision of the MOU deprived Phillips of his property interest in his employment without due process of law because it did not provide for notice of the reasons for his dismissal, an opportunity to respond orally or in writing, and an evidentiary hearing. (*Id.* at pp. 656, 660.)

For reasons not germane to this discussion, the California Supreme Court disapproved *Phillips v. State Personnel Bd., supra,* 184 Cal.App.3d 651 to the extent that it held that an employee who is deemed to have resigned his employment under an automatic resignation provision is entitled to the same procedural protections as an employee who is discharged for cause. Under an automatic resignation provision, the employee is entitled only to notice of the facts supporting the resignation and to an opportunity to respond; he is not entitled to a posttermination evidentiary hearing. (*Coleman v. Department of Personnel Administration, supra,* 52 Cal.3d at pp. 1119–1123 & fn. 8.) *Phillips*'s remaining holding, that due process rights may not be waived in a collective bargaining agreement, although correct, does not address the question in this case, i.e., whether a provision vesting the union with the authority to decide whether to pursue an evidentiary hearing constitutes a waiver of due process. Similarly, *Brown v. City of Los Angeles* (2002) 102 Cal.App.4th 155, 172–173, footnote 10 [125 Cal.Rptr.2d 474] and *Giuffre v. Sparks* (1999) 76 Cal.App.4th 1322, 1330–1331 [91 Cal.Rptr.2d 171], both cited by Jones, state the general proposition that procedures established by an MOU are subject to scrutiny to determine whether they violate due process, but neither case addresses the issue raised in this case.

Jones also argues that Omnitrans denied him due process by refusing to allow him to proceed to arbitration if he paid the costs. However, neither his writ petition nor the supporting memorandum of points and authorities

contains such an allegation, and as far as the record discloses, he did not seek leave to amend the petition to allege facts which would support the conclusion that Omnitrans had a duty to arbitrate if Jones paid the costs. Following an order sustaining a demurrer without leave to amend, a plaintiff can argue for the first time on appeal that the trial court's order was an abuse of discretion. (Code Civ. Proc., § 472c, subds. (a), (c); *McGettigan v. Bay Area Rapid Transit Dist.* (1997) 57 Cal.App.4th 1011, 1023–1024 [67 Cal.Rptr.2d 516].) However, the plaintiff has the burden of proving a reasonable possibility of curing the defect by amendment. (*McGettigan v. Bay Area Rapid Transit Dist., supra,* at p. 1024; *Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1080 [6 Cal.Rptr.3d 457, 79 P.3d 569].) Jones has not made any showing that an amended petition alleging that Omnitrans had a duty to afford him a hearing if he could pay the costs would withstand a demurrer.

## CONCLUSION

■ Because the MOU provided Jones with adequate procedural due process, Omnitrans had no duty to afford Jones a hearing. Jones's petition thus fails to state a cause of action for mandamus, and the demurrer was properly sustained. We affirm the judgment dismissing the petition.

The parties are to bear their own costs on appeal.

Hollenhorst, Acting P. J., and Gaut, J., concurred.

Appellant's petition for review by the Supreme Court was denied April 13, 2005. Werdegar, J., was of the opinion that the petition should be granted.